GRAFTON COUNTY ELECTRIC LIGHT AND POWER CO. *& a. v.* STATE.

Where an electric light and power company asks permission to acquire the phy-
    sical properties of other similar corporations and to issue stock and bonds in a
    stipulated amount in payment therefor, a finding by the public service com-
    mission, that such transfers would not be for the public good because the
    proposed capitalization is excessive, does not properly present the questions to
    be adjudicated by the court upon an appeal from an order dismissing the petition.
In such case, it is the duty of the commission to find and certify whether the
    proposed transfers at a proper capitalization would be for the public advantage,
    and if their finding upon that question be in the affirmative, to determine the
    amount of stock and bonds which in their opinion is reasonably requisite for
    the specified purpose.
In addition to the questions of law which may be involved in an appeal to the
    supreme court from orders and decisions of the public service commission,
    questions of fact presented by the record are open for discussion and determina-
    tion, subject to the limitations that the findings of the commission are to be
    taken as *prima facie* correct and that the orders made are not to be disturbed
    unless it plainly appears beyond reasonable controversy that they are unjust
    or unreasonable.

APPEAL, from orders and decisions of the public service commis-
sion, filed April 22, 1914.  The appellants are the Grafton County
Electric Light and Power Company, the Lebanon Electric Light
and Power Company, and the Mascoma Electric Light and Gas
Company, all New Hampshire corporations.  The Grafton County
company was organized under general law in September, 1912, for
the purpose of taking over the physical properties of the other
corporations.

There were two petitions filed with the public service commission
on September 27, 1912.  By the first petition, the Grafton County
company asked for authority to issue $300,000 in stock and bonds
for the acquisition of the physical properties of the Lebanon and
Mascoma companies and $60,000 in stock and bonds for new ex-
penditures on those properties made after November 1, 1912, and
also for permission to engage in business in Lebanon and Hanover
and to transmit electric energy outside the state.  By the second
petition, the Grafton County company asked permission to acquire
the physical properties of the Lebanon and Mascoma companies and
to issue stock and bonds in the aggregate amount of $300,000 in

payment therefor, and the Lebanon and Mascoma companies asked for authority to sell to the Grafton County company on the foregoing terms.

At the hearing before the commission, the book values of the material assets of the Mascoma and Lebanon companies were shown to be $145,036.93. The Grafton County company contended, and there was evidence to show, that said assets were worth more than $300,000. The commission found that, on account of the excessive price at which it was proposed to transfer and capitalize the properties, such transfers would not be for the public good, and dismissed the petitions. The commission made no finding as to whether the proposed transfers would be of public advantage without reference to capitalization asked for, and did not report the maximum capitalization of the properties which would be approved.

*Thomas W. Streeter* (of Massachusetts), *Benjamin W. Couch*, and *Streeter, Demond, Woodworth & Sulloway* (*Frank S. Streeter* and *Mr. Demond* orally), for the plaintiffs.

*Louis E. Wyman* (by brief and orally) and *James P. Tuttle*, attorney-general, for the state. It is apparent that the appeal amendment of 1913 was not intended to enlarge the scope of review by the court or to curtail the original power of decision by the commission. On the contrary, inasmuch as the amendment of 1913 substituted the supreme court, which as at present constituted is considered a "law" court, for the superior court, which is the "trial" court, it is rather to be concluded that the questions raised on appeal were to be treated as "law" questions. The original act of 1911 provided for an "appeal" by complaint "in the nature of a bill in equity . . . against the commission as defendant." The amendment of 1913 provided that the appeal should be by "petition." That the interested party was not the commission, but the state, is shown by the further provision that all proceedings for the enforcement of the orders of the commission are to be brought in the name of the state.

If the legislature had intended an appeal in the sense that the word is ordinarily used it would have added no qualifying words. The legislature might have stopped, but did not, after providing that any party aggrieved "may appeal." If it had stopped, the language of this court in *Bickford* v. *Franconia*, 73 N. H. 194, 195, might have had a stronger application. *Boston & Maine. R. R.* v. *State, ante,*

437.    The only jurisdiction given by the public utilities act is that by way of petition, and "on that jurisdiction the legislature might impose limits." *Erie R. R.* v. *Utility Board*, 85 N. J. Law 420.

An appeal, strictly speaking, vacates the judgment *ipso facto.* Under the statute in question, "no appeal or other proceedings taken from an order of the commission shall suspend the operation of such order." Laws 1913, *c* 145, *s.* 22 (i).    The court *may* suspend, but this is a special authority, not a characteristic of an appeal.    In the case of unqualified appeal, the proceeding is *de novo*, without regard to the judgment or findings of the court below.    In the case of this statutory appeal, the matter in question before the court is the order itself, and the judgment of the court is rendered "with reference thereto."    Laws 1913, *c.* 145, *s.* 22 (g).    If it was the intent that the court should pronounce a "distinct and original" judgment, there is no sense in the provision that its judgment shall be "with reference" to the judgment of the commission.    The legislature did not intend two hearings upon the merits.

The appellants have insisted that inasmuch as the law of 1911 provided for a "complaint" which "shall be tried and determined as other suits in equity," in which proceeding new and additional and different evidence may be taken, therefore the independent judgment of the reviewing tribunal was contemplated.    In the first place, the very fact that the original act provided, not for an appeal, but for an appeal by complaint, is evidence of legislative intent to provide for a review similar to that provided for in the interstate commerce act and in other state acts creating commissions, where direct action in a court of competent jurisdiction is contemplated; *e. g.*, Texas.    See *Reagan* v. *Trust Co.*, 154 U. S. 362.    Furthermore, this argument of the appellants leaves out of consideration the fact to which we have already directed attention: that all new or additional evidence upon request is sent back to the commission whose finding upon all the evidence is the subject of review.    That this evidence is transmitted to the commission upon "request" or "motion" is inconsequential; the gist of the statute is that the "order" and not the subject-matter is the real question before the court.

The scope of review contemplated by a similar statute in Michigan was directly considered by the United States supreme court in *Detroit etc. Ry.* v. *Commission*, 35 Sup. Ct. Rep. 126.    By the Michigan act, the circuit court in chancery (by process like our complaint "in the nature of a bill in equity") was empowered

"to affirm, vacate, or set aside the order in whole or in part, and to make such other order or decree as the courts shall decide to be in accordance with the facts and the law." This should be noted as a provision for review far broader than the New Hampshire act of 1911, or of 1913. The supreme court said: "If different or additional evidence is introduced, the court before judgment is to transmit a copy of it to the commission, and the commission may alter or rescind its order and is to report its action to the court, and the judgment is to be rendered as though the last action of the commission had been taken at first. . . . Taking the two provisions together, it seems plain that the words 'such other order or decree' in the first do not embrace a change in the rates fixed, but only such order or decrees as are incident to an equity cause. This interpretation . . . is the natural one upon the face of the statute."

There is a further striking difference between an "appeal" as such and this statutory proceeding. In an appeal, no attention is paid to the record in the lower court, as for instance upon probate or police court appeals. In the proceeding by petition, the case stands for argument before the court upon the "record," and "upon the hearing the burden of proof shall be upon the party seeking to set aside any order or decision of the commission to show that the same is clearly unreasonable or unlawful, and *all findings* of the commission upon *all questions* of fact properly before it shall be deemed to be *prima facie* lawful and reasonable." Not merely are the findings of fact to be deemed *prima facie* reasonable, but the findings upon all questions of fact are to have *prima facie* weight. If upon the evidence it appears that there is evidence upon which reasonable men could properly have found as the commission did, the conclusion can scarcely be found to be unreasonable. Furthermore, the statute does not stop with giving *prima facie* weight to the *findings* of the commission upon questions of fact: it is provided that "*the order or decision* shall not be set aside . . . unless the court is satisfied by a clear preponderance of the evidence before it that such order is unjust or unreasonable." The distinction between the "findings" and the "order" is to be noted. With *prima facie* weight given to the findings, is the order clearly unreasonable?

If in the course of litigation a court were to make an order itself upon any evidence before it, it certainly would make its order upon its own view of the proper conclusion to be drawn by force of the preponderance of the evidence. If an independent judgment by

the court on the facts was intended, the words now found in the statute would have been left out.   It would have been nonsense for the legislature to provide that the court must base its conclusion on the very foundation upon which every conclusion of a dutiful court is always based—its judgment of a preponderance of the evidence. The legislature would have stopped—but again it did not; it said that the order "shall *not* be set aside unless," etc.   These words cannot be disregarded as surplusage.   Compare *Marsh* v. *Insurance Co.*, 71 N. H. 253.   They were designed to protect the judgment of the commission from the independent judgment of the court.   The order is to be set aside, if at all, only because the court determines that the order is clearly unreasonable, not merely because the court may find that the court would not have made the same order as an original proposition.   There is no intimation in any section of the act that the court is to make any order upon the facts.   "The final judgment upon every appeal shall be a decree dismissing the appeal, or vacating the order complained of in whole or in part, as the case may be; but in case such order is wholly or partly vacated, the court may also, in its discretion, remand the matter to the commission for such further proceedings, not inconsistent with the decree, *as in the opinion of the commission justice may require.*"   Laws 1913, c. 145, s. 22 (h).   For abuse of power, for arbitrary conduct, or for any unreasonable or unjust disregard of property rights, the commission is accountable to the court; but so far as it is possible for a legislative or administrative tribunal created by statute to be endowed with discretion, that discretion is to be exercised by this commission in the last analysis for its determination of "what justice may require."

All this discussion presupposes conflicting evidence upon which reasonable men may differ.   If upon the evidence reasonable men could come to but one conclusion, the work of the court is obvious; but if reasonable men may differ, which is to prevail, the judgment of the specially created legislative-administrative body, or the judgment of the law court?   See *Baltimore etc. R. R.* v. *Company*, 215 U. S. 481.

It is because it was intended to avoid this conflict that the statute so clearly distinguished between the findings of fact and the order by the commission.   The legislature recognized the difference between an unreasonable rate, service, or practice, and an unreasonable order prescribing a rate or service.   Notwithstanding that a certain rate or service might be unreasonable in fact in the judgment of a court, nevertheless if that particular rate were established

by the legislature, the act of the legislature would not be declared unreasonable and void unless the legislature in fixing that rate exceeded its constitutional limitations. The same rate established by that legislative creature, the commission, must and was intended to stand or fall by the same test. *Louisville etc. R. R.* v. *Garrett,* 231 U. S. 298, 313.

That a range of legislative or administrative discretion was contemplated by the New Hampshire act is found in the use of the words "reasonable" and "unreasonable." Such an expression is not "a mere generality. . . . Indeed, if the statute assumed to fix any other standard of rates than that they should be reasonable, we think it would be much more open to attack than in its present form. A law-maker may exhaust reflection and ingenuity to state all the elements which affect the reasonableness of a rate, only to find that in a particular case he had omitted the factor which controlled the disposition of that case." *Saratoga Springs* v. *Company,* 191 N. Y. 123. The conclusion is inevitable that an order prescribed by the commission cannot be "unreasonable" so long as it is "within the range of legislative discretion," any more than the acts of the legislature itself or of an aldermanic board could be held "unreasonable" if they do not transcend the limits of their discretionary powers.

It is apparent from what has been said that the statutory provisions under consideration fall within that class of statutes commonly described as declaratory; they provide for a judicial review. This conclusion is further borne out by the provisions of section 18, chapter 164, Laws of 1911, by which a penalty is imposed for failure to comply with "every order made by the commission." There is not a word about any order by the court, and there is no qualification (such as lawful, or reasonable) as to the kind of an order which shall be obeyed. The process of review was designedly limited to prevent the commission from being treated as a perfunctory body; it was intended to afford a simple and immediate opportunity for complaint to the courts if any grounds for such complaint were felt to exist by any party; it precluded delay and uncertainty; and the insertion of the provisions for a review forestalled the argument that otherwise would certainly have been made, that the act was unconstitutional because designed to make the commission's findings "not merely *prima facie* equal and reasonable, but final and conclusive; . . . that the law neither contemplates nor allows any issue to be made or inquiry to be had as to their equality or

reasonableness in fact." *Chicago etc. Ry.* v. *Minnesota,* 134 U. S. 418. To avoid this bugbear the statutory appeal was a real necessity.

PARSONS, C. J. At the suggestion of the court the argument has been confined to the preliminary questions (1) whether the record is sufficiently complete for adjudication here, (2) whether additional evidence shall be received, and (3) as to the scope of the appeal.

1. There were two petitions before the commission: (1) The plaintiffs asked for authority to issue stock and bonds and to engage in business in Lebanon and Hanover; and (2) the plaintiffs and the Lebanon Electric Light and Power Company and the Mascoma Electric Light and Gas Company asked permission for a transfer of all the property and franchises of the two latter to the first petitioner. "On account of the excessive price at which it is proposed to transfer and capitalize these properties," the commission found "such transfer would not be for the public good" and dismissed both petitions. All the capital of the Lebanon and Mascoma companies, both stock and bonds, is owned by the persons wishing to operate as the Grafton County company. The second petition is practically a request for permission to consolidate the two companies into one. Such transfer as is proposed may be made if the commission assent thereto, and the commission are required to make an order of assent if such transfer would be for the public good. Supp. P. S. 349; Laws 1911, c. 164, s. 13 (b).

Such a combination as is here proposed may or may not of itself be of public advantage, without reference to any question of price or capitalization. If it is found that such combination would be for the public advantage, the question at what sum the present owners should be permitted to capitalize the property in the new corporation will arise. Until that fact is found affirmatively, discussion of the question of capitalization is purely academic; and for this court to undertake the examination of the conclusion of the commission thereon would be not merely academic, but utterly useless. Ordinarily, where a petition is denied upon a single ground, it would perhaps be assumed that no other objection to granting it existed, and some expressions in the report tend to establish such conclusion in this case; but nevertheless the commission expressly hold open the question "whether the transfer is otherwise unobjectionable." The price at which the original holders sold the property, or which the present owners paid for it, while important as

evidence upon the question of capitalization, can have no bearing upon the question whether these two properties should be operated as one.    Over the price either thought wise to make a measure of the transfer of the property neither the commission nor the legislature have or can have any control.

"No . . . public utility shall issue any stock, bonds, notes, or other evidence of indebtedness payable more than twelve months after the date thereof, without first procuring an order of the commission authorizing the same.    Upon petition of the directors of a railroad corporation or public utility, the commission shall, after public notice and hearing, determine the amount of stock or bonds which in its opinion is reasonably requisite for the purposes for which the issue is to be made." Supp. P. S. 350; Laws 1911, c. 164, s. 14 (a).    Much .evidence is contained in the record and some evidentiary facts are found, but the fact which the statute makes it the duty of the commission to find is not found.

The plaintiffs' original pleading may have been faulty.    Their petition should perhaps have asked the commission to "determine the amount of stock or bonds which in its opinion is reasonably requisite for the purposes for which the issue is to be made."    Laws 1911, c. 164, s. 14 (a).    But whether the prayer of the petition asking the authorization of an exact amount of stock and bonds should or should not, in view of the definite terms of the statute and modern liberality in pleading, have been considered sufficient to constitute a request for a determination of the amount reasonably requisite for the purposes of the proposed issue, the error, if one, was corrected by the definite request in the motion for rehearing, "that the commission find the price at which it will approve the transfer of the Mascoma and Lebanon properties, respectively, and the amount of stock and bonds which it will authorize the Grafton County Electric Light and Power Company to issue in payment of the same." Language could not be more definite or express in the submission to the commission of the precise question the statute required them to determine.

One purpose of requiring a motion for a rehearing, setting forth every ground of complaint, must have been to enable the commission to correct any error into which it may have fallen and thereby render an appeal unnecessary.    The statement that the petitioners might bring another petition asking a transfer at a less purchase price would involve useless and unnecessary procedure. That a party should be driven out of court for mere defect in form

and compelled to begin anew, is a proceeding so foreign to New Hampshire practice for the last thirty years that it cannot be presumed the legislature intended to require such technicality.

After the denial of their motion for rehearing, the plaintiffs filed a request for an amendment of the report making the original order, or of that denying the motion for rehearing, definitely fixing the amount of the capitalization which the commission would approve of the Lebanon and Mascoma properties. The point which the statute required the commission to find was thus definitely presented a second time, and the failure to pass thereon was error of law. For the reasons suggested, the appeal might now be sustained and the orders of dismissal vacated; but such order at this time would not mean progress in the litigation and might occasion unnecessary expense in a second presentation of the record. Instead of vacating the order at this time, it seems more convenient procedure to allow the same to stand until the facts that have not been found can be found and certified. The matter is recommitted to the commission to find and certify whether the proposed consolidation at a proper capitalization will be for the public good, and if it is, to determine the amount of stock or bonds which in their opinion is reasonably requisite for the purpose proposed.

It is conceded that questions of law involved in the action of the commission are revisable by this court. It is therefore the duty of the commission to find all facts which either party may request essential to the presentation of all questions of law raised by any decision or order made by them. *Broderick* v. *Hunt, ante,* 139.

2. The plaintiffs offer and ask to have considered certain evidence which was not submitted before the commission. The evidence appears material and important, and there is some evidence tending to show accident and mistake as a reason for not presenting it before the commission. Should the order dismissing the petition be sustained, the petitioners would be at liberty to commence a new petition, upon the trial of which the evidence could be presented. Convenience in administration seems to require its consideration now in connection with the evidence already taken. The evidence has been presented in the form of affidavits. The clerk will transmit to the commission certified copies of the affidavits and also of this opinion and order, for such further proceedings in accordance therewith as in the opinion of the commission justice may require.

3. The third question, as to the scope of the appeal, remains to be considered. The act of 1911 which created the public service com-

mission gave an appeal to "any party in interest aggrieved by any order of the commission or by any part of an order containing distinct and severable provisions,  . . .  by complaint in the nature of a bill in equity, filed in the superior court  . . .  against the commission as defendant," to "be tried and determined as other suits in equity." Laws 1911, *c.* 164, *s.* 17 (b). These provisions of section 17 were repealed in 1913, and a new section covering the matter of appeal was adopted. Laws 1913, *c.* 145, *s.* 18 (adding *ss.* 20, 22, to *c.* 164, Laws 1911); *Ib.*, *s.* 19. So extensive repeal and reënactment suggests an intention to materially alter the character of the appeal provided. The provisions upon the subject are so rewritten and rearranged in the 1913 statute that critical examination and careful comparison of the two sections are necessary to ascertain what changes were intended by the repeal and reënactment then made; but such examination and comparison disclose that the substance and scope of the appeal are unaltered. The language used in both sections declaring the repeal of section 17 is significant. "Section 17 of said act in its original form is repealed" are the words in each instance, evincing an understanding that the changes made were of form merely. The power of the tribunal appealed to in the final judgment which it may render upon the appeal is in each instance set forth in the same language. Laws 1911, *c.* 164, *s.* 17 (f); Laws 1913, *c.* 145, *s.* 22 (h). Paragraph (i) of section 22, chapter 145, Laws of 1913, giving the appellate tribunal power to suspend an order of the commission pending an appeal and prescribing the procedure in such case, is identical with paragraph (g) of section 17, chapter 164, Laws of 1911, save only for the substitution of the word "supreme" in the place of "superior" as descriptive of the tribunal. The same language is used to define the weight to be given the conclusions of the commission in each case: "all findings of the commission upon all questions of fact properly before it shall be deemed *prima facie* lawful and reasonable"; and the essentials to the reversal of orders of the commission are in each case the same: "the order appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied by a clear preponderance of the evidence before it that such order is unjust or unreasonable." Laws 1911, *c.* 164, *s.* 17 (d); Laws 1913, *c.* 145, *s.* 22 (e).

In the act of 1913, more comprehensive language is used to describe the persons who may appeal and the matters to which the appeal may relate. In these respects a more extended appeal

appears to have been intended, but the procedure is complicated
by the requirement of a motion for rehearing before the commission
as an essential preliminary to the appeal.   Laws 1913, c. 145, s. 22
(a), (b).   The material changes there made, however, are in the
tribunal, substituting the supreme court for the superior court, and
in the form of the procedure.   In place of a bill in equity brought
in the superior court, the remedy of the party appealing is a petition
to the supreme court.   The commission are no longer properly
named as defendants.   *Boston & Maine R. R. v. State, ante,* 437.
As the appeal originally provided for was to be· heard and tried
as other suits in equity and the issues presented by the appeal
"tried and determined by the court" (s. 17 (b) ), it must have been
intended that the issues of fact should be settled in the usual way
upon evidence adduced in open court.   The act however provided
that "with the answer of the commission there shall be filed a trans-
cript of the testimony introduced before the commission, together
with the originals or copies of all exhibits introduced in evidence
before the commission," with the further provision: "If, upon the
trial of such appeal, evidence shall be introduced which is found
by the court to be different from that offered upon the hearing before
the commission or additional thereto, the court, before rendering
judgment, upon request of either party, shall·transmit a copy of such
evidence to the commission and stay further proceedings for fifteen
days from the date of such transmission" (s. 17 (d) ).

In the act of 1913, the procedure is somewhat different, producing,
however, the same result.   Upon receiving notice of the filing of the
petition of appeal, the commission are required to file with the clerk
of the supreme court a certified copy of the record in the proceeding,
together with such of the evidence introduced before or considered
by them specified by either party, or considered by the commission
proper to be certified, with the originals or copies of all exhibits
(s. 22 (d) ).   No new or additional evidence is to be considered, but
the case is to be determined upon the record, except that in certain
contingencies the court may permit the taking of additional evidence.
If such evidence is received, the new evidence is to be transmitted
to the commission at the request of either party and the proceedings
stayed as under the law of 1911 (s. 17 (f) ).   The power of the com-
mission and of the court after the certification of additional evidence
to the commission is substantially the same under either statute.
It is therefore, under either statute, within the power of either party
to an appeal to require that the action of the court shall be based

upon the same evidence as that of the commission, although such course is not obligatory upon them.   While under the act of 1911 the appellant apparently may as of right produce any new or additional evidence, under the act of 1913 he may not do so unless the court find the evidence comes within the exception of the statute. In this respect the procedure under the appeal is materially modified.

No change in the scope of the appeal being intended in the reënactment of the appeal provisions in 1913, the question is: What control did the legislature originally intend to give to the appellate tribunal over the conclusions of fact judicially determined by the commission in the exercise of the jurisdiction committed to them? There is no occasion to go farther in the present case.   Whether an appeal lies as to mere administrative acts of the commission, or what powers of that description the act gives the commission, are questions which may be left until they are raised by parties at issue over them.

One view suggested is that the control is merely supervisory.   If this be so, " 'the court has no power to revise the doings of the commissioners for the purpose of ascertaining whether they have judged wisely and correctly, nor for any purpose but to see that their proceedings have been regular, and that fraud and surprise has not been used to vitiate their results'. . . . 'Verdicts of juries, reports of referees, committees, or other officers appointed by law to determine controversies, are governed by the same general rule.   They cannot be set aside or rejected merely because the revisory tribunal might or would have come to a different conclusion upon the facts.   The proceedings, being regular and without error in law, will not be set aside unless the court can see that the triers, whether a jury or other tribunal, in coming to their results, 'were influenced by passion, prejudice, partiality, or corruption, or unwittingly fell into a plain mistake.' " *Doughty* v. *Little*, 61 N. H. 365, 368, 369.   This is the rule in all of the large class of cases where the legislature has committed to a particular tribunal the decision of questions of fact for final adjudication.   *Manchester* v. *Furnald*, 71 N. H. 153, 158; *Boody* v. *Watson*, 64 N. H. 162, 198. "When no appeal is provided from the decision of the constituted tribunal on questions of fact properly before it, the inference is the legislature intended that the decision should be final." *Attorney-General* v. *Sands*, 68 N. H. 54, 55.

"The superintending power is generally limited to such matters

of law and fact as must be tried and decided in order to correct errors of law. When the legislature intends a court's decision of questions of fact shall be revisable by another tribunal on a new trial of the whole case, whether there is error of law or not, an appeal is ordinarily provided." *Boody* v. *Watson*, 64 N. H. 162, 186. And conversely, the granting of an appeal in express terms implies that authority to revise the facts as well as the law is intended to be conferred upon the appellate body. The act of 1911 prohibited the review of any order of the commission by any proceeding except the appeal therein provided, or one founded upon excess of jurisdiction or other error cognizable under the general supervisory power. Laws 1911, *c.* 164, *s.* 17 (c). From this the conclusion must follow that the elaborate provisions for appeal contained in the statute were understood to confer appellate rather than the revisory power mentioned in the same section. And when with great care the same power placed with the superior court in 1911 was in 1913 conferred upon the supreme court, the manifest purpose of the legislature would be defeated if it were to be concluded that as the result of so painstaking legislation the court possessed only such powers as it would have had if the attention of the legislature had not been directed to the subject at all. *Boody* v. *Watson*, 64 N. H. 162, 186, 187; *Dinsmore* v. *Mayor and Aldermen*, 76 N. H. 187, 190, 191.

But while the legislature may give an appeal implying a reinvestigation of the facts as well as of the law, it may limit the extent of such reinvestigation. The question therefore is: What limit has been placed upon the general powers of an appellate tribunal? *Boston & Maine R. R.* v. *State, ante,* 437.

While the conclusions of the court may be based upon the evidence heard and considered by the commission, that is not a necessary result of the procedure. Absolutely conclusive evidence against the conclusions of the commission may be received which was not presented before that board. In permitting the introduction of new evidence before the appellate board, it must have been intended some use should be made of such evidence. The only use possible is as an aid in determining questions of fact pending before the tribunal. Hence it must have been understood that questions of fact would be presented before the tribunal, to be determined upon the evidence submitted. Generally, upon a broad appeal the case is heard anew upon evidence, without reference to the evidence at a former trial (*Bickford* v. *Franconia,* 73 N. H. 194), involving new

conclusions by the appellate tribunal.   The fact that a single piece of new evidence may be introduced, which must be considered, necessarily involves the weighing of all the evidence and consequently the finding of facts by the tribunal.

Counsel for the state suggest a distinction between the findings of the commission and their final order or decision.   The distinction is well taken.   Ordinarily, the findings of the commission will constitute the evidentiary facts upon which the justice or reasonableness of their order or decision will depend—the final question upon the appeal.   The verity of these conclusions is therefore of vital importance.   To illustrate: Upon a question of capitalization, if it were found that the property proposed to be capitalized did not exceed $150,000 in value, so long as such finding stands it could not even be argued that a refusal to approve a capitalization in stock and bonds at $300,000 was unjust or unreasonable.   The legislature could have provided that the findings of the commission should be conclusive, when the only questions open would be the existence of any evidence and the regularity of the proceedings; or all reference to them could have been omitted, which would have left the question of the weight to be attached to them open to argument.   The act however provides: "All findings of the commission upon all questions of fact before it shall be deemed *prima facie* lawful and reasonable, and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied by a preponderance of the evidence before it that such order is unjust or unreasonable."   Laws 1913, c. 145 s. 22 (e).

There is here a clear distinction between the weight to be given to the evidentiary findings upon which the final judgment of the commission is based and the final judgment itself.   The latter is not to be set aside or vacated unless clearly unjust or unreasonable, while the former are merely to be deemed *prima facie* lawful and reasonable.   "*Prima facie.* evidence is that which, not being inconsistent with the falsity of the hypothesis, nevertheless raises such a degree of probability in its favor that it must prevail if it be accredited by the jury, unless it be rebutted or the contrary proved; *conclusive* evidence, on the other hand, is that which excludes, or at least tends to exclude, the truth of any other hypothesis than the one attempted to be established."   1 Stark Ev. *453; *Emmons* v. *Bank*, 97 Mass. 230, 243.   "It is well settled in this state that the report of an auditor is *prima facie* evidence that its findings are correct, and that it makes a case  .  .  .  until its conclusions are

impeached, controlled, or overthrown by other evidence." *Drew* v. *Claggett,* 39 N. H. 431, 433; *Shouter* v. *Swindles,* 37 N. H. 559; *Bellows* v. *Woods,* 18 N. H. 305.

The necessarily absurd proposition, that the findings, whatever they might be, should constitute *prima facie* evidence of the justice and reasonableness of such orders as may be made, is obviously not intended, but the *prima facie* attribute of the findings is confined to the character of the findings themselves as lawful and reasonable deductions from the evidence upon which alone they could be founded. But as they are merely *prima facie,* they are not conclusive, but can be attacked and impeached. *Copp* v. *Henniker,* 55 N. H. 179, 230; *Wright* v. *Railroad,* 74 N. H. 128, 134. The direction of the statute, that the findings "upon the hearing . . . shall be deemed to be *prima facie* lawful and reasonable," necessarily means that they shall be so considered by the tribunal conducting the hearing, and, as *prima facie* implies that they are not conclusive, that the tribunal shall hear and consider the arguments and evidence by which they may be attacked and impeached, and determine the fact.

The burden therefore rests with the appellants to satisfy the court that upon the evidence the findings are erroneous. The fact that they are merely *prima facie* disposes of the contention that they were intended to stand, like the findings of a jury, if supported by any evidence. The legislature plainly intended to submit to the appellate tribunal the validity upon the evidence of the commission's findings of the evidentiary facts upon which the justice and reasonableness of the order appealed from might depend. The term "*prima facie*" imports merely that there was evidence upon which the finding could be made. Webster Dict. Whether the finding should be made is the question upon appeal. The various evidentiary findings being passed upon, the question remains whether the order should be vacated or set aside. This question may be disposed of by the conclusion upon the evidentiary findings reported. To return to the former illustration: If it were found upon all the evidence, giving due weight to the commission's findings, that the property proposed to be capitalized and reasonably necessary for the purpose was worth $350,000, and no question but one of value were involved, an order refusing to permit a capitalization at $300,000 would be clearly unjust and unreasonable.

There is a slight change in the phraseology relating to the trial or hearing before the appellate tribunal, from what it was in 1911.

The section, after providing that the case shall be in order for argument at the next regular session after the filing of the certified copy of the record, reads: "Upon the hearing, the burden of proof shall be upon the party seeking to set aside any order or decision of the commission to show that the same is clearly unreasonable or unlawful, . . . and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied by a clear preponderance of the evidence before it that such order is unjust or unreasonable" (s. 22 (e) ).    In 1911, the orders were grouped with the findings to be deemed *prima facie* lawful and reasonable.    It is equally clear upon the language now in force that it was understood that the issue presented was to be passed upon by the appellate tribunal as triers of fact.    One who has the burden of proof has the right as well as the duty to sustain it.    The right is implied from the duty.    When it is said that the plaintiff has the burden of proof, it is understood that he has the right to present the considerations upon which he relies and to invoke the judgment of the tribunal upon the issue.    He is not thrown out of court if the tribunal think some reasonable men might find against him, but he prevails unless the tribunal themselves think he has not sustained the burden.    The terms describing revisory power are familiar and simple.    It might have been provided that the order appealed from should not be set aside if there was any evidence to sustain it, or unless it clearly appeared reasonable men could not find it just and reasonable, or unless it could not reasonably be found just and reasonable. This, or similar language properly descriptive of the limited power which the state claims the statute intended to give the appellate tribunal, was not used, but, on the contrary, language usual in describing the action of a tribunal deciding issues of fact upon a preponderance of the evidence.

Giving to the language used its plain and ordinary signification, interpreting it as usually understood, there can be no escape from the conclusion that it is the conscience of the appellate tribunal which is invoked.    The question is not whether the commission acted honestly, or whether there is or not some evidence to support their conclusion, or whether some reasonable men might think the order just and reasonable, but is the mind of the appellate tribunal satisfied with the degree of certainty required by the statute that the order is unjust or unreasonable.    If the decision is one that can constitutionally be placed upon the court, the court cannot disregard the duty imposed.    The requirement that the court must be

satisfied by a clear preponderance of the evidence before it cannot be construed as prohibiting the court from weighing the evidence. The evidence required to sustain a decree for the reformation of a written instrument must be "entirely plain and convincing beyond reasonable controversy." "The mistake must be made out in the most clear and decided manner, and to the entire satisfaction of the court." *Searles* v. *Churchill*, 69 N. H. 530; *Tilton* v. *Tilton*, 9 N. H. 385. But in such case the decision is to be made upon a preponderance of all the evidence appearing with the requisite certainty, as weighed by the trier of fact. *Searles* v. *Churchill, supra.*

As has already appeared, the appeal provisions of the law of 1911 were thoroughly and carefully revised in 1913; and if the intent had been to abolish all correction of errors except those cognizable under the supervisory power, apt language to that effect would have been used, and the repeal of the appeal section of the law of 1911 would not have been limited to the repeal of the section in its original form. The purpose to impose directly upon the supreme court the appellate duties originally imposed upon the superior court is too plain to be mistaken. It is said that the supreme court is the court of law, and that it could not have been intended to require that court to find facts. While as a rule the supreme court has not had jurisdiction of questions of fact, it has always been understood since 1901 to include within its jurisdiction the determination of the facts involved in the incorporation of railroads under general law. *Petition of Laconia St. Ry.*, 71 N. H. 355. From the character of the jurisdiction of the public service commission, an appeal from its decisions directly to the supreme court rather tends to render the law uniform than to create an exception. To the suggestion that the jurisdiction given on the appeal is like the power of the court to set aside a verdict produced by passion, partiality, or corruption, or the result of a plain mistake, nothing need be added to what has already been said, further than to repeat the suggestion already made, that such purpose, if it had been entertained, could easily have been expressed, and in the careful revision of 1913 could and would have been inserted if such purpose had been in mind.

The interstate commerce act, and the citations to cases dealing with the power of the courts over the decisions of that and other similar bodies made in argument, have been examined, but they have not been found of much assistance. The act under consideration gives an appeal. *Boston & Maine R. R.* v. *State, ante,* 437. The only question is to what extent the provisions of the act are

limitations of a general appeal. What the power of the court would be in the absence of an appeal or in the presence of a mere review of legal error is of little consequence in construing a proceeding which by its terms naturally includes both law and fact.

It is urged that the duties imposed upon the commission are legislative in character, and that the duty of passing upon questions determined by the commission in the exercise of powers legislative in their nature cannot constitutionally be imposed upon the courts by appeal. *Steenerson* v. *Railway*, 69 Minn. 353. This conclusion rests upon a confusion of the character of the legislative power which can be delegated to the commission and the general power of making law entrusted to the legislature, which is absolutely non-delegable. *In re School-law Manual*, 63 N. H. 574; *State* v. *Hayes*, 61 N. H. 264, 329; *Gould* v. *Raymond*, 59 N. H. 260, 276. From this it follows that if the powers of the commission are legislative in the sense that they are invested with the general power of making law, the attempt to confer such power upon them is absolutely void; but if the acts they are authorized to do are merely acts which the legislature may perform in the course of the exercise of its law-making power, and not within the constitutional objection to the delegation of the power of making law, the only question is whether the duties sought to be imposed upon the courts by appeal are so intrinsically non-judicial in character that they cannot be performed by a judicial body. The legislature may make a law to take effect upon a contingency. Cool. Con. Lim. (6th ed.) 137, 138. It may delegate powers not strictly legislative which it may rightfully exercise. *Wayman* v. *Southard*, 10 Wheat. 1, 42, 43. It may make laws dependent upon the existence of facts the determination of which it may entrust to some other body. *Saratoga Springs* v. *Company*, 191 N. Y. 123; *Minneapolis etc. Ry.* v. *Commission*, 136 Wis. 146. It may delegate to an administrative board authority to make rules to secure the enforcement of law. *State* v. *Normand*, 76 N. H. 541. But no question is made as to the validity of the delegation to the public service commission of the powers now involved. In the absence of controversy and in view of the general unanimity of opinion upon the subject, discussion of the extent of the powers in some sense legislative which may properly be delegated by the legislature, and of the reasons for considering them of a legislative nature, is uncalled for.

The questions presented by this appeal are the value of the property involved and whether the public good requires or will

permit the proposed incorporation. Conceding that the legislature may delegate to another body the determination of these questions, which it might have settled for itself by an act incorporating the appellants or by refusing to do so, there is nothing in the nature of the questions upon which it can be said the determination of them by a court is beyond judicial power. Both are plain questions of fact. That the determination of value is a judicial question is too plain for discussion. What the public good requires is a question of fact. *Petition of M. & M. R. R.*, 68 N. H. 347. The power imposed upon the commission in this respect, however extensive in detail and great in its importance, is the same in principle as that exercised by selectmen in laying out highways, subject to appeal to the courts, since the earliest times. Laws, *ed.* 1792, *p.* 279; Laws 1862, *c.* 2621, *s.* 1; P. S., *c.* 68, *s.* 2. Whether a particular rate is reasonable is also a question of fact. "The question of the reasonableness of a rate of charge for transportation by a railroad company, involving as it does the element of reasonableness both as regards the company and as regards the public, is eminently a question for judicial investigation, requiring the process of law for its determination." *Chicago etc. Ry.* v. *Minnesota,* 134 U. S. 418, 458.

Whether as a matter of policy it would be more for the interests of the public that the conclusions of the commission should be made final and conclusive is not a judicial question. The only question before the court is whether the legislature has granted a retrial of justiciable questions by the court, and whether, if it has attempted to do so, it can. Both of these questions are answered in the affirmative. "Undoubtedly, a state may permit appeals to its courts from the rate-making orders of its railroad commission, and upon the review of such orders it may expressly authorize its judicial tribunals to investigate and decide questions which otherwise would not belong to them." *Louisville etc. R. R.* v. *Garrett,* 231 U. S. 298, 314.

"The final judgment upon every appeal shall be a decree dismissing the appeal, or vacating the order complained of in whole or in part, as the case may be; but in case such order is wholly or partly vacated, the court may also, in its discretion, remand the matter to the commission for such further proceedings, not inconsistent with the decree, as in the opinion of the commission justice may require." Laws 1913, *c.* 145, *s.* 22 (h). Whether the controversy can be disposed of by a decree dismissing or vacating the order complained of "in whole or in part" will depend upon the facts of the particular

case. But the authority to vacate the order in part seems to require the court to determine to some extent, at least, what order may be just and reasonable. But discussion of the final judgment may well be left until there is occasion to make it.

As to the scope of the appeal, the conclusion is that, in addition to the questions of law that may be involved, the questions of fact presented by this record are open for discussion and determination, subject to the limitations that the findings made by the commission are to be taken as *prima facie* correct and that the orders made are not to be disturbed unless it plainly appears "beyond reasonable controversy" that they are either unjust or unreasonable. In accordance with the suggestion upon the first two points, the order is,

*Remanded.*

All concurred.