May 4, }
  1915. }

GRAFTON COUNTY ELECTRIC LIGHT AND POWER CO. & *a. v.* STATE.

Any proposed action is for the "public good" if it is not forbidden by law and is reasonable under all the circumstances as a matter of fact.

The surplus earnings of a corporation may be capitalized by any means other than the declaration of a stock dividend.

An increase in the capitalization of a public service corporation to an amount not exceeding the value of its assets is not contrary to the public good.

The surplus of a public service corporation is the property of the stockholders, and cannot be taken from them, directly or indirectly, in whole or in part, by denying them the right to use it as they may use other property.

The statute providing that the public service commission shall report action to the court within twenty days after a case is remanded applies to cases which are sent back solely for the consideration of new evidence admitted by the court upon appeal.

In determining the amount at which a public service corporation may properly be capitalized, the rates which the company has itself fixed and received are not evidence of the value of the property devoted to the public use.

APPEAL, from an order of the public service commission dismissing the petitions referred to *ante*, 490.

It appeared in evidence that the cost of the property of the Lebanon and Mascoma companies to the owners of the Grafton County Company was substantially its book value, which largely exceeded its capitalization. The commission were of opinion that the property was worth a larger amount, but that its capitalization at its value would be contrary to the public good. The Lebanon and Mascoma companies are physically connected, but serve different localities. The separation of accounts necessarily involved in keeping up the organization of both companies was deemed by the commission to be of importance upon the issue of public good. They were also of opinion that the results sought by the petitions would in effect violate the stock dividend statute (P. S., *c.* 273, *s.* 11) and that the petitions should be dismissed for that reason.

*Thomas W. Streeter* (of Massachusetts), *Benjamin W. Couch*, and *Streeter, Demond, Woodworth & Sulloway* (*Frank S. Streeter* orally), for the plaintiffs.

*Louis E. Wyman* (by brief and orally), for the state.

PEASLEE, J. The public service commission having found that the proposed transactions would be contrary to the public good, the appeal brings that question here for consideration. The measure by which the matter is to be determined is described by the legislature as "the public good." Laws 1911, *c.* 164, *s.* 13, as amended by Laws 1913, *c.* 145, *s.* 13. This is equivalent to a declaration that the proposed action must be one not forbidden by law, and that it must be a thing reasonably to be permitted under all the circumstances of the case. If it is reasonable that a person or a corporation have liberty to take a certain course with his or its property, it is also for the public good. It is the essence of free government that liberty be not restricted save for sound reason. Stated conversely: it is not for the public good that public utilities be unreasonably restrained of liberty of action, or unreasonably denied the rights as corporations which are given to corporations not engaged in the public service.

The public utilities statute includes individuals as well as corporations in the category of those subject to supervision and regulation. *Ib., s.* 1. This act is primarily one to regulate public utilities rather than corporations. The regulation of corporate activities is undertaken solely from a public service standpoint, and the powers conferred are to be administered accordingly. There is nothing in the statutes relating to public service corporations which in any way tends to contradict or limit this theory. Ample provision is made for supervision, to the end that unreasonable conduct may be restrained, but there is no suggestion that the affairs of public service corporations are to be treated on any but a sound business basis. The questions here are then: Are the proposed transfers, consolidation, and increased capitalization, or any of them, (1) contrary to law or (2) unreasonable?

In the consideration of these matters upon appeal, the court is required to give the weight prescribed by the statute (Laws 1911, *c.* 164, *s.* 22 (e), added to the original act by Laws 1913, *c.* 145, *s.* 18) to the findings, rulings, and orders of the public service commission. In this the proceeding differs from an ordinary appeal, and a review of the acts and reasoning of the commission is enjoined upon the court. The order dismissing the application as contrary to the public good is based by the commission upon both of the grounds indicated above. It was thought that the transactions, in effect, violated the stock dividend statute (P. S., *c.* 273, *s.* 11), and also that they were objectionable upon other and more general grounds.

1. Is the capitalization of a surplus prohibited by the stock dividend statute? It is to be noted that there is no provision upon the subject in the general corporation law. The only statute relating to it is one imposing a penalty for participation in the declaration of a stock dividend. There is no provision that a corporation shall not sell all its property and receive the full value thereof, even if the sale be to a new corporation whose stock is to be taken in payment by the old corporation or its stockholders. The capitalization of a surplus by means other than a stock dividend is not prohibited. Clearly, the criminal law relating to stock dividends cannot be extended so as to cover such a transaction. As there is no other statute upon the subject, the conclusion that the transactions here under consideration are forbidden by law is unsound.

2. Is there substantial reason why the application should be denied? The reasons given by the commission and urged by counsel for the state are, in the main, that the result will be that the capital outstanding against this property will be largely increased, that such increase ought not to be permitted without a corresponding increase of assets, and that this applies with especial force to a case where the present owners of the stock have bought it for less than its value and purpose to make a profit in this manner. It does not seem to us that these are sufficient reasons for denying to those engaged in public service activities the rights in this respect which are possessed by strictly private corporations. The reasons for this conclusion are fully set forth in *Trust Co.* v. *Electric Co.*, 71 N. H. 192, and need not be repeated here.

The trouble with the main reasons given for the order in this case is that they do not in any way concern the public use to which the property is devoted. The property upon which the company will be entitled to claim to earn an income is not made either greater or less by these transactions. It may be that it has property which it can properly capitalize, which it would not be entitled to treat as a part of that now used in developing electricity and upon which it therefore could not base its present rates. The two questions are quite distinct. It may capitalize what it owns, but it can charge rates only on the basis of so much of its property as is devoted to the business in hand. Upon the question of what rates shall be permitted, the issue is one of a fair return for the service rendered, not of a fair dividend upon the capital of the corporation.

And if it be conceded that capitalization has a legitimate bearing upon rates, it must follow that it is only just and reasonable that

capitalization be a fair index of the value of the property of the company. If it is for the advantage of the public in the locality served that capitalization be kept down in order that rates be low, it is for the advantage of the company that stock issues be inflated so that rates may be high. But neither one situation nor the other is for the public good. The question of public good is not to be answered by looking only to the immediate interests of the public served by these companies, nor by a mere consideration of advantage to those who furnish the service. As before stated, it is a question of what is reasonable taking all interests into consideration.

It is urged by counsel as a further reason for denying the petition that the public has some vague interest in the surplus which has been accumulated, so that it may deny to the owners the full enjoyment thereof. The authorities are clear that the surplus is the property of the companies. *Opinion of the Justices*, 66 N. H. 629; *Fall River Gas Works* v. *Commissioners*, 214 Mass. 529. Since it is their property, it cannot be taken from them directly, nor can they be deprived of it indirectly, either in whole or in part, by denying to its owners the right to use it as they could use their other property.

The suggestion that the separation of the accounts of the Lebanon and Mascoma companies can be more effectually maintained if they remain as separate corporations does not seem to be a sufficient reason for denying a consolidation. If there is substantial reason why public service charges should be apportioned in such small units, the result can be obtained by an order for separate accounting systems.

It is our opinion that it is reasonable that the Mascoma and Lebanon companies be permitted to transfer their property to the Grafton company, to be paid for in securities of the latter company in such sum as will represent the value of the property transferred. The order denying the petitions is vacated, and the case is remanded to the commission for such further proceedings, not inconsistent with the opinions and findings of the court, as in the opinion of the public service commission justice may require.

This means that the case will then be before the commission for such further trial of the facts or argument on the law as any party in interest may desire. The commission have stated that the matter of value has not been fully tried, and from this it necessarily follows that opportunity for further hearing is required. In short, the commission will now proceed with the case precisely as they

would if the present conclusion as to the public good had been announced by them. It seems to have been assumed, when the case was last before the commission, that the time given for its consideration by them was limited to twenty days. Laws 1911, c. 164, s. 22 (g), added by Laws 1913, c. 145, s. 18. That provision applies only when the case is sent back for the consideration of new evidence admitted by the court upon appeal. It has no application to the situation which is now presented. Now, as on the recommittal last February, the case goes back for further proceedings other than the mere consideration of the new evidence certified by the court. In such cases there is no statutory limit upon the time within which the commission must complete the hearing and consideration of the case.

It has been suggested in argument that the appeals in the rate cases should be now dismissed in order that that question be investigated as bearing upon the question of value. There seems to be no occasion for such action, because while value affects reasonable rates, the converse of the proposition is not true. As the commission said in their original report in this case, by adopting such a theory "we at once find ourselves traveling the old familiar vicious circle, proving value by rates and rates by value." In private enterprise, it is true that the rate of profit enters into value; but the whole theory of rate regulation is to remedy such situations. Excessive rates (which increase value) are prohibited by statute; and rates which are not compensatory (and thus confiscate property) are unconstitutional. The question is what rates shall property of this value earn, not what is the value of property which can command these rates.

*Order set aside: case remanded.*

All concurred.