Public Utilities Commission,
No. 4697.

BOSTON & MAINE RAILROAD *v.* STATE.

Argued February 3, 1959.

Decided February 27, 1959.

*Sulloway, Hollis, Godfrey & Soden* (*Mr. Hollis* orally), for the petitioner Boston & Maine Railroad.

*Warren E. Waters*, Deputy Attorney General, for the State, furnished no brief.

*Buckley, Zopf & Sayce* (*Mr. Buckley* orally), for the town of Charlestown.

WHEELER, J. The Commission found "that the public convenience and necessity require[d] the continuation of this agency . . . . " The statute (RSA 374:28) empowers the Commission to discontinue services permanently "whenever it shall appear that the *public*

*good* does not require further continuance of such service." (Emphasis supplied). Whether the Commission interprets the standard of "public convenience and necessity" to be synonymous with the statutory standard of "the public good" is not disclosed by the record.

The statutory term "public good" has been given a broad definition by this court and has been held not only to include the needs of particular persons directly affected by curtailment of services but also to the needs of the public at large and the general welfare of the utility involved. "The measure by which the matter is to be determined is described by the legislature as 'the public good.' Laws 1911, c. 164, s. 13, as amended by Laws 1913, c. 145, s. 13 [RSA 374:28]. This is equivalent to a declaration that the proposed action must be one not forbidden by law, and that it must be a thing reasonably to be permitted under all the circumstances of the case. If it is reasonable that a person or a corporation have liberty to take a certain course with his or its property, it is also for the public good. It is the essence of free government that liberty be not restricted save for sound reason. Stated conversely: it is not for the public good that public utilities be unreasonably restrained of liberty of action, or unreasonably denied the rights as corporations which are given to corporations not engaged in the public service." *Grafton &c. Co.* v. *State,* 77 N. H. 539, 540. See also, *Boston & Maine R. R.* v. *State,* 97 N. H. 380, 385.

The issue presented by these proceedings is whether the public good as heretofore defined requires a continuation of the agency facilities at Charlestown.

The evidence disclosed that if the agency at Charlestown is discontinued and the station buildings retired it will result in a net annual saving of $7,177 to the railroad. The major part of the saving is the agent's salary amounting to $5,504. The chief inconveniences to be suffered by the individuals directly involved will result from the closing of the passenger waiting station and the requirement that shippers of less than carload lots bill their freight at Bellows Falls, Vermont, a distance of about seven miles. In and out carload lots and shipments of over 4,000 pounds will still be "spotted" and picked up at Charlestown. For the year 1957 the railroad estimated its freight revenue from carload lots to be $11,203.65 and from less than carload lots $460.32.

The agent is presently on duty Monday through Friday from

7 A. M. to 4 P. M. and in 1957 sold an average of only seven to eight tickets daily. There are four trains daily in each direction, including Sunday, stopping at Charlestown. Approximately one half of the passengers take a train when the agent is not on duty. If the station is closed the same daily train service will be continued, and fares to any point may be paid on the train. The railroad has offered to sell the station for one dollar provided a suitable waitingroom is made available.

At the hearing before the Commission there was some criticism of existing passenger service and the only opponent receiving freight withdrew his opposition when informed that carload lots of grain could still be "spotted" at the station if the petition to abandon was granted. Although we have many times pointed out that findings by the Commission "are accorded a legislative presumption of reasonableness" and are not "lightly to be set aside" (*Tilton* v. *Railroad*, 99 N. H. 503, 504), we are "satisfied by a clear preponderance of the evidence" that the order entered herein by the Commission "is unjust [and] unreasonable." RSA 541:13.

Accordingly the order is

*Order set aside.*

All concurred.