Public Utilities Commission
No. 79-271

### APPEAL OF LEGISLATIVE UTILITY CONSUMERS' COUNCIL
### (NEW HAMPSHIRE PUBLIC UTILITIES COMMISSION)

March 12, 1980

*William L. Shaine*, of the Legislative Utility Consumers' Council, by brief and orally, for the plaintiff.

*Sulloway, Hollis & Soden*, of Concord (*Martin L. Gross* orally), for the defendant Public Service Company of New Hampshire.

PER CURIAM. This is an appeal under RSA ch. 541 from a ruling of the Public Utilities Commission (PUC) authorizing the Public Service Company of New Hampshire (PSC) to alter the percentage of its undivided ownership in the Seabrook Nuclear Electric Generation Station (Seabrook) from 50% to 28%. Under RSA 541:13, the Legislative Utility Consumers' Council (LUCC) has the burden of showing by a "clear preponderance of the evidence . . . that such order is unjust or unreasonable" and all questions of fact found by the PUC "shall be deemed to be prima facie lawful and reasonable."

Seabrook is owned in common by various companies with PSC owning 50%. To finance the project, each company pays construction costs in accordance with its percentage of ownership. Thus, PSC currently must pay 50% of the Seabrook construction costs. To pay these costs, PSC raised funds through the sale of stock and by borrowing. Until last year, the company raised the

money to pay dividends and interest on its obligations by including construction work in progress (CWIP) in its rate base. *See LUCC v. Public Service Co.*, 119 N.H. 332, 402 A.2d 626 (1979). CWIP, however, was outlawed by statute in 1979. RSA 378:30-a.

Contending that without CWIP or some other form of revenue, it cannot raise sufficient money to finance its 50% ownership in Seabrook, PSC seeks to reduce its ownership to 28%. It proposes to reduce its ownership interest by not making any financial contribution to future construction for twenty-one months. During that time, Seabrook's other owners will finance all the costs of construction in return for an additional 22% interest. Thereafter, PSC will again contribute toward the cost of construction but only at the reduced rate of 28%, commensurate with its percentage of ownership.

RSA 374:30 permits a public utility to transfer any part of its franchise, works or system when the commission finds that it will be for the public good. The commission's finding that divestiture will be for the public good is amply supported by the evidence. The evidence that PSC cannot, without CWIP or some other source of revenue, support more than a 28% interest in Seabrook was undisputed.

■ LUCC attacks the commission's decision on the ground that it failed to consider the public's future power needs in determining that divestiture is for the public good. We see no such defect in the commission's ruling. What is for the public good is not easy to define because it is impossible to foresee all the possible reasons that could be advanced for or against divestiture. The financial necessity to avoid insolvency, apparent in this case, was not foreseen in any of the cases cited. We agree with LUCC that the future need for power is an important factor, and the commission should weigh it, when it appears that the utility will have the financial capability to supply that power. When, as in this case, that capability has been denied and made impossible without unconstitutional confiscation, *New Eng. Tel. & Tel. Co. v. State*, 104 N.H. 229, 232–33, 183 A.2d 237, 241 (1962), the future need for power loses its relevance. The "general welfare of the utility involved" becomes the dominant issue. *Boston & Maine R.R. v. State*, 102 N.H. 9, 10, 148 A.2d 652 (1959). If the utility can remain solvent, the public good is served. *Grafton County Electric Light and Power Co. v. State*, 77 N.H. 539, 94 A. 193 (1915). A bankrupt utility is not in the public interest.

■ Furthermore, a public utility is not bound to supply consumer energy needs beyond its financial capacity to do so. PSC is still a private company, albeit a regulated one, and it may not constitutionally be required to apply its resources to the benefit of the public without a fair return. *LUCC v. Public Service Co.*, 119 N.H. 332, 402 A.2d 626 (1979); *see Grafton County Electric Light & Power Co. v. State*, 77 N.H. 490, 93 A. 1028 (1915). The State cannot require the utility to retain 50% ownership of Seabrook and deny it the resources to pay for it.

We also note that the PUC did not entirely ignore the public's future power needs. Though it denied LUCC's demand for an "independent study" of the issue, it conducted one of its own, the results of which were reported July 30, 1979.

Finally, we observe that when LUCC was fighting to outlaw CWIP, it argued that PSC should divest and that it could do so and still meet power needs. LUCC staff had, as late as March 1979, represented that PSC could meet the State's energy needs with a 25% interest in Seabrook.

After its efforts contributed to depriving PSC of the means of retaining 50% ownership on the ground that divestiture should occur, LUCC has now reversed its position while at the same time opposing means advanced to finance continued ownership. Its present position is thus untenable.

We also find no error in the PUC's decision to postpone consideration of the effect of divestiture on the future rate base of PSC. That is a matter that can be determined when the question arises in due course.

*Appeal dismissed.*