CHESHIRE.

KEEFE *v.* THE SULLIVAN COUNTY RAILROAD.

A provision in the charter of a railroad corporation, that the road shall be so constructed as not to obstruct the safe and convenient use of any private way which it crosses, imposes upon the corporation the duty of maintaining a safe and convenient crossing for such private way.

PETITION, for a crossing over the defendants' railroad, under Gen. Laws, *c.* 161, *s.* 16. The petition was presented to the commissioners, who, after due notice and a hearing, reported that there was a legally established crossing from the plaintiff's premises over the tracks of the company to the highway; that said crossing was built by the defendants in 1848, and has been at all times since kept, repaired, and maintained by them until October, 1882, when they put in an additional track and removed the plank from the crossing, and have since neglected and refused to replace them, or build and maintain a new crossing for the plaintiff's use; that there has been at all times since the construction of the railroad, and now is, a reasonable and just demand for a crossing for the convenient use and accommodation of the premises now owned and occupied by the plaintiff; and that the road leading from the plaintiff's premises over the tracks of the railroad to the highway heretofore mentioned has been used ever since and for a long time prior to the construction of the railroad. They therefore report that the legal right of the plaintiff to a crossing exists; that the crossing has been established, but that the neglect and refusal of the railroad to re-lay, build, keep, and maintain a crossing for the plaintiff's use is a matter over which the commissioners have no jurisdiction.

At this term the plaintiff entered his petition upon the docket, and filed the foregoing report, and moved that it be recommitted to the commissioners, with instructions to establish a crossing agreeably to the statute. The court granted the motion, and the defendants excepted.

*Lane & Dole*, for the defendants.

*Josiah G. Bellows*, for the plaintiff.

SMITH, J. The defendants contend that the court has no jurisdiction of this petition, and excepted to the order recommitting the report to the commissioners. Chapter 953, *s.* 5 of Laws 1850,

imposed upon every railroad corporation the duty of constructing cattle guards, cattle passes, and farm crossings for the convenience and safety of the land-owners along the line of their road, the place and number to be determined by three justices of the peace in case of disagreement between the corporation and land-owner. The justices were required to make a report of their doings in writing, and file a copy with the town-clerk of the town where the land was situated. In the revision of the statutes in 1867 the county commissioners are substituted for justices of the peace, as the tribunal to which application may be made for establishing cattle guards, cattle passes, and farm crossings, in case the owner of the land and the proprietors of the railroad do not agree upon the place, number, and kind of cattle guards, passes, and crossings to be constructed. Either party may apply to the commissioners, who, after notice, hearing, and examination, are to determine the number, places, time, and manner of construction of the same. The commissioners are required to file their report with the clerk of the supreme court for the county (Gen. Sts., c. 147, ss. 1, 16, G. L., c. 161, ss. 1, 16), and their report is made conclusive. If the proprietors of the railroad do not construct the cattle guards, passes, and crossings within the times limited by the commissioners, and pay the costs adjudged to be paid by them upon request, they forfeit twenty-five dollars for each month's neglect. Section 17. Unlike the proceedings on a petition for partition, or for a new highway, the petition is not addressed to the court, nor entered in court. It is addressed to the commissioners, who proceed to the discharge of their duties without any order or direction from the court. Their report is filed with the clerk, who becomes its custodian, as the town-clerk was the custodian of the report of the justices prior to 1867. The statute does not expressly require the report to be made to the court, and does not expressly provide for a hearing or judgment upon it, or a recommittal of it. As it is made conclusive by statute, a judgment upon it seems to be unnecessary. Like the award of arbitrators upon a common-law submission, it is practically a judgment, with the substantial qualities and incidents of a judgment. The penalty of twenty-five dollars per month, imposed upon the proprietors of the railroad for their neglect to construct the crossing within the time and in the manner fixed by the commissioners, is security to the owner of the land that the report will be complied with. It is not necessary to determine whether in any case a report of the commissioners on such a subject can be recommitted. If the power of recommittal is vested in the court, there appears to be no reason why either party should desire its exercise in this case.

The commissioners have reported that a farm crossing from the plaintiff's premises across the defendants' railroad to the highway is necessary for the convenient use and accommodation of his premises. They declined to lay out a crossing, because, in their

opinion, a legal crossing was established in 1848, when the railroad was built, which crossing the defendants constructed, maintained, and kept in repair from 1848 until 1882.    Whether prior to the passage of the act of 1850 a railroad corporation was obliged to construct farm crossings was left unsettled in *March* v. *Railroad,* 19 N. H. 372, 378, decided in 1849.    The legal duty of constructing farm crossings imposed by the statute of 1850, undoubtedly includes the duty of maintaining and keeping them in repair so long as needed.    But the defendants claim that inasmuch as there was no statute requiring railroad corporations to maintain farm crossings when the plaintiff's damages were assessed in 1848, the presumption is that the expense of a crossing to be borne by the plaintiff was considered in the assessment; and it is claimed that the act of 1850 does not apply to railroads constructed prior to its passage, and if applied to the defendants in this case, a duty would be imposed upon the defendants which the plaintiff has been paid to perform, and that the statute, so far as it imposes this duty upon railroads constructed before its passage, is unconstitutional. The established crossing mentioned in the commissioners' report is upon a "road leading from the plaintiff's premises over the tracks of the railroad to the highway."    This "road" the defendants in their brief say was "an old farm drive-way."    The defendants' charter provides,—"If the said railroad in the course thereof shall intersect or cross any private way, the said corporation shall so construct said railroad as not to obstruct the safe and convenient use of such private way; and if said railroad shall not be so constructed, the party aggrieved shall be entitled to his action on the case, and shall recover reasonable damages for such injury: but no action shall be commenced after the expiration of two years from the obstruction aforesaid."    Laws 1846, *c.* 395, *s.* 7.    In *March* v. *Railroad, supra,* it was said,—"Technically, there is some difficulty in having a 'private way' over one's own land.    *    *    *    There is, however, room for question whether the term 'private way' in railroad charters    *    *    * does not apply to all cases where the road interrupts the communication between the different parts of one's land, so that the corporation will be obliged to construct suitable crossings at proper places for the use of the land-owner."    In this case the term "private way," as used in the defendants' charter, includes the plaintiff's drive-way; and the defendants so constructed their road in 1848 as not to obstruct that way.    At that time they performed the duty accepted with their charter by building a crossing for him ; and their duty of maintaining it and keeping it in repair for his use they performed until October, 1882, when they gave him his first cause of complaint by removing the planks of which the crossing was constructed.    There is no presumption that the assessment of land damages in 1848 included damages for the obstruction of this private way which the defendants could not lawfully

19*

obstruct, and did not obstruct when they built their road, and which they continued to maintain for thirty-four years afterwards. The conclusion of the commissioners, that the plaintiff has a legally established crossing which the defendants are bound to maintain, is, for the practical purposes of these parties, substantially correct.

The case has been argued as though a petition for a *mandamus* to the commissioners to establish a crossing had been filed; and we have therefore considered the case upon the facts stated in the report. The defendants have used the existence of the plaintiff's path or way as a defence against this petition before the commissioners. *Wilbur* v. *Abbot*, 60 N. H. 40, 53. There is no lack of remedies for enforcing the plaintiff's rights. If the parties need a decision of the question whether the commissioners can lay a way where the plaintiff's old way was, and still is, it will be considered: but this question may not be material in view of the plaintiff's ancient path preserved by the defendants' charter. The case may be continued to await the settlement of the controversy by agreement, or by such legal proceedings as the plaintiff may see fit to institute.

All concurred.