June 24, 1926.

PATRICK J. BOLGER, *Adm'r*, *v*. BOSTON & MAINE RAILROAD.

Application to the public service commission for the establishment of a private railroad crossing is not a waiver of a claim of a right to such a crossing by agreement with the railroad.

The right to have a private railroad crossing maintained, whether arising by agreement of the parties or by order of the public service commission, may be enforced only through the courts. The enforcement of established rights is a judicial function, which administrative tribunals may not exercise.

The public service commission may make orders as to the continued maintenance, location and arrangement of private railroad crossings, however established. Even when such a crossing is established by agreement which fixes the terms and conditions, they are to be construed as subject to the public interest involved, and may be modified or abrogated under the regulatory scope of the statute.

Power on the part of the public service commission to discontinue a legally established private crossing is reasonably implied from the statute.

A change proposed to be made in the use of an established private crossing is within the regulatory jurisdiction of the public service commission. A crossing reasonably required under existing conditions may be such that its use under changed conditions would be unreasonable.

Provisions regarding private crossings found in early railroad charters were superseded by the subsequent general legislation on the subject.

APPEAL, from the denial by the public service commission of a petition to provide a private crossing over the defendant's tracks.

The decedent owned a tract of land in Concord·on the easterly side of the Concord & Claremont branch for a distance of about 1100 feet along the railroad. Opposite the land and on the westerly side of the railroad an area of land extends to a highway. When the railroad was built about seventy-five years ago, the land on both sides was in a single ownership, and there were two driveways across it from the highway, crossings being put in and maintained where they intersected the railroad. Since the railroad was built the tract on the westerly side has been divided into various parcels, the decedent's deed given in 1921 conveying to him two strips of it described in the deed as "driveways" and extending to the highway from the railroad at points respectively near the northerly ·and southerly ends of his land across the railroad. His southerly driveway is the southerly way in use when the railroad was built, the crossing of which has ever since been maintained.

Prior to thirty or forty years ago the northerly way crossed the track one hundred feet or more southerly of the crossing of the present

northerly driveway, for which a legally established crossing is sought to be provided. The change followed a cutting of the timber on the land easterly of the railroad. After the cutting the northerly way was fenced off on the easterly side of the railroad by the landowner, and either then or in the course of time the present northerly driveway came in use. Since the timber was cut, the land on the easterly side of the railroad has been maintained as an open field. The original northerly way until given up was maintained, the present northerly driveway since its construction has been maintained, and the southerly way has always been maintained, for such use on the easterly side of the railroad as has been made of it. There was also evidence of a public use of the original northerly way and of the southerly way tending to show their character as highways by prescription. No public use has been made of the present northerly driveway.

The decedent gave a subsidiary of the Texas Company an option to buy some of his land on the east side of the railroad for a storage and distribution station of its petroleum products. A right of way over the present northerly driveway was contemplated as appurtenant to the land, and the concern intervened in the petition as a plaintiff. Since the appeal was brought it has abandoned its option and withdrawn as a party to the suit.

The commission (1) found that it was not contended that the crossing had been used under any claim of right, (2) found that the crossing is more dangerous than the one at the southerly end of the decedent's land, and (3) found or ruled that by bringing the petition the decedent impliedly admitted that the crossing had never been legally established. On these grounds and on the further ground that upon the facts as existing and as found the decedent was entitled as a matter of law to the crossing, the appeal was taken.

*Joseph C. Donovan* and *Edward C. Niles* (*Mr. Niles* orally), for the plaintiff.

*John B. Sawyer* of Massachusetts (by brief and orally), for the defendant.

ALLEN, J. The commission's finding that the crossing is more dangerous than the southerly one is sustained. If this ground of appeal has not been abandoned, it is enough to say that an examination of the evidence confirms the finding.

The findings that there was no contention that the crossing had been used under a claim of right and that the decedent by bringing the petition admitted the crossing had never been legally established,

are set aside and reversed. The evidence shows the contrary. While the findings are *prima facie* evidence of their correctness, thus placing on the plaintiff the burden here of proof to the contrary (*Grafton &c. Co.* v. *State*, 77 N. H. 490, 503, 504), the burden has been sustained, in addition to the ordinary burden resting on a proponent.

Private crossings may be legally established either by agreement, express or implied, of the parties, or by order of the commission under the statute. When the agreement for a crossing is doubtful or in dispute, an effort to have it established in a way and by a record that will clear the doubt or settle the dispute does not amount to a concession of the non-existence of the agreement. The evidence for the plaintiff clearly showed the claim of an established crossing, with the purpose, not of abandoning it, but of relying on it as a substantial and important element for action by the commission in his favor. If in seeking to enforce the right to a crossing claimed to be established by an agreement, the plaintiff's remedy is by original application to the courts instead of to the commission, a question later to be given consideration, his action here in first seeking the commission's aid is clearly a misconception of his proper procedure rather than an acknowledgment of having no crossing already established. Nor is there any rule of estoppel as matter of law by which a proceeding erroneously brought for the enforcement of one's rights forecloses a proper proceeding for the purpose.

Whether there was a highway by prescription over the original northerly way has not been found. That the public made some use of it for a long period appears. On the other hand it does not appear to have been maintained by the public, and when the public's use of it was cut off by a fence, it does not appear that there were any legal proceedings for its discontinuance as a highway. The plaintiff, however, does not rely upon a public character of the way, but upon the landowner's own private interest in it, in helping to support his claim to the present one near it. The landowner's own discontinuance of it when or before the present one was substituted is enough to estop him and his grantees from any present claim for a crossing therefor. But the plaintiff's claim is that the railroad's conduct in moving the crossing to accommodate the present way, and since maintaining it, proves an establishment of the present crossing as a matter of right admitted by the railroad, or in other words a crossing established by agreement. The issue of the public character of the former way is therefore not involved.

The chief question presented by the appeal is whether under the

law as applied to the facts appearing the commission was required to provide and establish a crossing for the plaintiff at the location sought as a matter of right or whether it had discretionary authority on the subject.

The claimed right to a crossing rests chiefly upon the existence of a past agreement establishing it. The commission's erroneous findings that no such claim was made and that the petition was a waiver of any claim show that no finding was made whether the crossing as previously in use was established by agreement or existed under a revocable permission. As the statute (P. S., c. 159, s. 19, as amended by Laws 1911, c. 164, s. 3; reënacted by P. L., c. 249, s. 42) reads, the commission is to determine "the number, places, time and manner of construction" of crossings, if the landowner and railroad "are not agreed upon the place, number or kind" of crossings. In other words the commission is to act on the subject of providing a crossing if the railroad has not already furnished one satisfactory to the landowner. When it is in dispute whether a crossing has been established by agreement, the commission on a petition under the statute must first determine the preliminary issue of such an agreement. If it finds the crossing already established by agreement, its jurisdiction to establish the crossing by order is lacking. It is given no power of confirmation, and the enforcement of established rights is a judicial function which administrative tribunals may not exercise. No such authority is implied by the statute. On the contrary its conditional language shows that the legislative intention was otherwise. The right to have a crossing maintained, whether arising from the parties' agreement or resulting from the commission's order for it, may only be enforced through the courts, to which jurisdiction has been assigned. "If the proprietors of a railroad or any other party wrongfully obstruct a pass already provided in accordance with an agreement or an order of the railroad commissioners, the cause of action falls within the general jurisdiction conferred upon the court by section 4, chapter 204, Public Statutes." *Farwell* v. *Railroad*, 72 N. H. 335, 336.

But the finding, if made, of an existing crossing established by agreement does not end the jurisdiction of the commission if the proceeding before it invokes its regulatory authority. While it may not reëstablish the crossing by confirmatory order, and while it may not undertake remedial action for wrong done, it may make orders affecting existing crossings, however established, as to their continued maintenance, location and arrangement.

The establishment of the right does not permanently fix the character and extent of the right, unless and except as the statute may prescribe. "The question of the location of the farm crossing is to be determined by the application of the doctrine of reasonable use. . . . The convenience of all parties is to be considered in determining this question. . . . A farm crossing once established is not so located that it can never be changed. The necessity for changes has been recognized and provided for by legislation. P. S., c. 159, ss. 14, 19." *Costello* v. *Railway*, 70 N. H. 403, 405. "The legal duty of constructing farm crossings imposed by the statute of 1850 undoubtedly includes the duty of maintaining and keeping them in repair so long as needed." *Keefe* v. *Railroad*, 63 N. H. 271, 273.

The statutory provision that the commission shall determine the "number, places, time and manner of construction" of crossings when the landowner and railroad are not agreed in respect thereto shows plainly the legislative policy of changes to meet changed conditions and requirements under the application of the principle of reasonable use. Reasonable abridgment is contemplated as much as reasonable extension. It is not to be presumed that a crossing established by agreement is to be maintained and continued on any other conditions not expressly made a part of the agreement than one established by public order. Both the railroad and the landowner would naturally contemplate possible changes calling for changes in crossings by their elimination, increase or relocation. A hard and fast rule of law that a railroad crossing established by the parties gives the landowner an easement as definite and permanent as a right of way conveyed by one individual to another has no merit of justice or reason to support it, especially in the face of the legislative policy that the public regulation of the subject shall take into account the convenience and situation of both parties. The modifiable character of orders of regulation implies rather than negatives a like character for agreements in relation to the subject. An agreement for a crossing at a given point and its establishment there do not import an agreement for permanence of location regardless of changes in the situation. The right is analogous to a way of necessity which ceases when the need ceases. Public safety and the proper operation of the railroad are considerations of importance as well as the landowner's convenience. Granting that justice and reason require that a landowner shall not have his land altogether shut off from access and that any order with such effect

would be contrary to the statutory obligation of the railroad to furnish suitable crossings, the law does not impose a burden beyond reasonable necessity. If time removes the necessity, the law follows suit and removes the easement. No distinction in reason is to be made in the regulation of private crossings established by or without public order. Even where a crossing is established by agreement which fixes the terms and conditions, they are to be construed as subject to the public interest involved and may be modified, altered or abrogated under the regulatory scope of the statute. Except as the statute furnishes it, no other remedial method is given for taking action, and only a qualified character of the easement being contemplated by the statute, provision for concrete ascertainment of the qualifications and for orders to make them of practical utility to meet changed conditions is to be implied if the statute is capable of such construction.

While the statute does not expressly provide for a discontinuance of an established crossing, yet it is an implication reasonably, if not necessarily, within its scope. By the statute either party may apply for action in pursuance of it, and since the commission may determine the number of crossings, authority to reduce as well as to increase the number is not doubtful, in the light of the settled construction of the statute making a crossing subject to change.

Since the principle of reasonable use and the convenience of all parties is to be considered in a proceeding to establish a crossing, it follows that a proposed change in the use to be made of the crossing is an incidental feature within the regulatory authority conferred by the statute. A crossing reasonably required under existing conditions may be so located and arranged as to make unreasonable its use in connection with new uses of the land which it benefits. The present case forcibly illustrates the effect of a change of use, in the great increase of danger both to person and property of a collision between a train and truck carrying explosive and inflammable material. A way for one purpose is not a way for all purposes, and the particular use made or to be made must affect the reasonableness of its requirement.

The plaintiff's contention that the charter of the Concord & Claremont Railroad gives a permanent character to a private crossing once established also disregards the principle of reasonable modification. The charter provides as follows: "If the said railroad shall in the course thereof intersect or cross any private way, the said corporation shall so construct said railroad as not to obstruct

the safe and convenient use of said private way; and if said railroad shall not be so constructed, the owner of said private way shall be entitled to his reasonable damages for said injury, to be recovered by action on the case, to be commenced within two years from such obstruction." Laws 1848, c. 659, s. 6.

Prior to 1850 there was no general legislation on the subject of private crossings over railroads, and the various railroad charters granted severally provided for such crossings in the same or similar language as is used in the Concord & Claremont charter. In 1850 a general statute (Laws 1850, c. 953, s. 5) was enacted applicable to all railroads and providing procedure for the establishment of crossings if the parties did not agree as to their "place, number or manner in which" they should be constructed. The statute in its application to all railroads superseded the special charter legislation on the subject theretofore enacted. It indicated no change of legislative policy in providing for the character of such crossings, but merely furnished additional machinery for their establishment. The charter requirement that the railroad should furnish crossings is not subject to a construction that when furnished they should have attributes of perpetuity regardless of future changes. The duty to furnish a crossing because it was reasonably required did not impose a duty to continue it after such requirement came to an end, nor did the act by implication make a crossing once established so immovable in location that no urgency however reasonable might not justify a change of location.

The charter legislation as the forerunner of the general legislation on the subject which developed and amplified it, contains no language showing a legislative purpose to give a greater length of life to a crossing than the general legislation does. The construction of the latter is to be applied to the charter provisions as the original source of the general legislation. The principle of reasonable use is equally applicable to both forms of legislation.

The erroneous finding of the commission that the plaintiff has waived his right to claim an established crossing in connection with his northerly driveway would ordinarily mean a rehearing. The commission, however, has further found that "even if the petitioner is entitled to another crossing" than his southerly one, "it is not at the location desired by the landowner and the Texaco company because of the danger involved." In effect the commission has found the proposed use of the crossing for access to a station for handling petroleum products unreasonable. The finding is

abundantly sustained by the evidence, and is final not only as to the intervenor but also as to the plaintiff. The petition sought an order on the defendant to provide a suitable crossing at the locus. There was thus raised the question of its reasonable requirement. Whether it was required at all or for some purposes or for general use was an incidental inquiry, and an order specifying and limiting the use was within the commission's authority. The proposed use was the main subject of contention between the parties, and has been fully and fairly litigated. The errors appearing do not affect the result reached in respect to the exclusion of use for such a pur-  ɔse. Whether or not the plaintiff already has an established crossing, it clearly appears that such use of it would be unreasonable. The dismissal of the petition to the extent of upholding the denial of permission so to use the crossing is accordingly sustained.

Whether the parties desire further action on the petition to have it determined if there is now reasonable occasion for any use of the crossing is not clear. The present and probable future suitability of the southerly driveway as the sole entrance to the land east of the railroad remains undetermined. The determination of the plaintiff's claim that the crossing in controversy is an established one bears upon the inquiry. If the claim is sustained, the question then is whether and for what use the easement should be continued. If the claim is not maintained, the question arises whether a crossing should be established at its location and on what terms. The statute authorizing the commission to proceed on application by either party, a motion by either party for further hearing to have the undetermined matters tried and passed upon should be granted. If further hearing is not sought, the denial of the petition is to become final with effect as hereby limited. The present appeal does not present these questions for consideration here. Action by the commission thereon is first necessary, since the statute (Laws 1913, c. 145, s. 18; P. L., c. 239, s. 18) empowers the court only to confirm or reverse what the commission does.

The appeal was taken by the landowner in his lifetime. Since his death it has been prosecuted by his administrator. No objection has been made to the procedure, and the question whether the administrator or the heir at law is the proper party has not been considered.

*Case discharged.*

All concurred.